**STRINGFELLOW v. ATLANTIC COAST LINE R. CO.**

No. 6617.

Circuit Court of Appeals, Fifth Circuit.
March 31, 1933.

Rehearing Denied April 21, 1933.

HUTCHESON, Circuit Judge, dissenting in part.

Wm. C. McLean, of Tampa, Fla., for appellant.

Jas. R. Bussey, Sam H. Mann, Jr., and McKinney Barton, all of St. Petersburg, Fla., for appellee.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

BRYAN, Circuit Judge.

Appellant, in her own right as widow and as administratrix, brought separate actions, which were consolidated for trial, against the appellee railroad company for negligently running its train upon and fatally injuring her husband and two minor children at a street crossing in the town of Dunedin, Fla. Negligence was alleged (1) in failing to give warning of the approach of the train by sounding the whistle or ringing the bell of the engine, and (2) in running the train upon the street crossing at a dangerous rate of speed. Appellee pleaded not guilty, and at the close of all the evidence the trial court directed a verdict in its favor upon the ground that the injuries complained of were caused solely by the negligence of appellant's husband. Appellant contends in support of her assignments that it was error to take the case away from the jury.

The accident, which resulted in the injuries alleged, occurred in the daytime at a grade crossing where Scotland street intersects the railroad right of way at right angles, the street extending east and west and the right of way north and south. On the right of way the main line was flanked on either side by a side track. To the south of the crossing the main line was straight for half a mile or more, but the view in that direction of one going east on the street was cut off by trees until the west side track, within 20 feet of the main line, was reached, at which point the view to the south was open and unobstructed. At the time of the accident, appellant's husband was driving his automobile, in which his children, one seven, and the other nine, years of age, were riding with him, toward the east across the intersection; and the train was coming from the south. The train was a few minutes late, and was not due to stop at Dunedin. A strong wind from the northwest interfered with the hearing of any one at the crossing who might be listening for the rumble of the train, or for any warning that might have been given by whistle or bell. The evidence was in hopeless conflict as to whether the whistle was sounded or the bell was rung;

and also as to the speed of the train. Several witnesses for appellant who were near the place of the accident and in position to hear testified that they heard no whistle or bell; and they gave various estimates of the rate of speed, ranging from 30 to 50 miles per hour. Two of these witnesses cited as evidence of their ability to estimate speed speedometer tests which they said they had made, while traveling by automobile on highways parallel with railroad tracks, of the speed of trains going in the same direction as they were. On the other hand, witnesses for appellee, particularly the engineer, fireman, and members of the train crew, testified that, as the train approached Scotland street, the last of four blasts of the whistle was sounded, and that the bell was being rung by an automatic ringer from the time the train reached the fourth street south of Scotland street until after the accident. Members of the train crew also testified that the train had slackened speed as it passed through Dunedin, and that it was running at a rate not exceeding 10 or 12 miles per hour as it approached Scotland street. The fireman testified that he saw appellant's husband drive upon the crossing about 60 feet in front of the engine, and that he called to the engineer, who immediately put on the emergency brakes. The engineer testified that he did not see the automobile because it approached from the west, and he was on the east side of the engine, but that he applied the emergency brakes as soon as the fireman called out to him and stopped the train as quickly as was possible. The engine proceeded about 100 yards north of Scotland street before it was brought to a standstill. Several witnesses for appellee testified that appellant's husband drove across the intersection at a speed of 10 to 15 miles per hour; but the testimony as a whole leaves it uncertain whether he stopped or slackened speed when he arrived at the crossing, and whether he actually saw the train.

Compiled General Laws of Florida provide:

"A railroad company shall be liable for any damage done to persons, stock or other property, by the running of the locomotives, or cars, or other machinery of such company, or for damage done by any person in the employ and service of such company, unless the company shall make it appear that their agents have exercised all ordinary and reasonable care and diligence, the presumption in all cases being against the company." Section 7051.

"No person shall recover damages from a railroad company for injury to himself or his property, where the same is done by his consent, or is caused by his own negligence. If the complainant and the agents of the company are both at fault the former may recover, but the damages shall be diminished or increased by the jury in proportion to the amount of default attributable to him." Section 7052.

It is plain that under section 7051 a prima facie case was made out. It is appellee's contention that the presumption of its negligence, which arose under that section, upon proof of the injuries as alleged, was overcome by further proof which disclosed that those injuries were caused solely by the negligence of the injured persons, and that the case presented is not one which calls for the application of the rule prescribed in section 7052 for apportionment of damages, because no fault was attributable to it. Of course, appellant could not recover for the death of any party who could not, if living, have recovered damages because of his injury. In so far as the case depends upon appellant's right to recover for the death of her husband, we are of opinion that it was not error to direct a verdict for appellee. Her husband as driver of the automobile, was under the duty of exercising the care and caution which a reasonably prudent man would have displayed under the same or similar circumstances. It therefore was his duty to use his senses of sight and hearing before undertaking to cross the railroad tracks. If when he had passed the trees and had an open view down the track he had looked, he would have seen the train and could have avoided the collision. A careful and prudent driver of an automobile would not under the circumstances have undertaken to drive over the crossing in front of the approaching train. Notwithstanding section 7052, he could not have recovered for an injury, and so recovery cannot be had on account of his death. Seaboard A. L. Ry. v. Tomberlin, 70 Fla. 435, 70 So. 437; Egley v. S. A. L. R. Co., 84 Fla. 147, 93 So. 170; Atlantic C. L. R. Co. v. Gornto, 89 Fla. 97, 103 So. 117; Florida E. C. R. Co. v. Davis, 96 Fla. 171, 117 So. 842; Covington v. S. A. L. R. Co., 99 Fla. 1102, 128 So. 426; Southern R. Co. v. Mann, 91 Fla. 948, 108 So. 889. In our opinion, the right of recovery for the deaths of the children should have been submitted to the jury. The children were guilty of no negligence; and their father's negligence could not be imputed to them. The judgment is defend-

ed as to them only on the theory that the father's negligence was the sole proximate cause of their deaths. But the jury might reasonably have concluded that their deaths were caused by the combined or concurrent negligence of their father and the railroad company. There was substantial evidence, tending to prove that no warning by whistle or bell was given and that the train was being operated at a negligent and dangerous rate of speed, to support the conclusion that the collision would not have occurred if the warning had been given or if the train had been operated at a more moderate and reasonable rate of speed. It was for the jury, not the court, to say whether it was negligence to run the train through a populous community without warning, or at a speed so great that it could not be stopped within less than 100 yards; especially if because of a strong headwind it was made difficult for those using the street intersection to hear a train approaching from the south.

It is true that in Covington v. S. A. L. R. Co., supra, a case somewhat similar to this, the Supreme Court of Florida held that the failure of the driver of the automobile to stop at the crossing for an approaching train was such negligence as precluded recovery of damages by his nine year old son who was also riding in the automobile. But the driver in that case could have seen the train at a distance of 75 feet from the crossing, whereas in this case the view was much more limited. Besides, there it was fairly inferable from the pleadings and the evidence that the driver actually saw the train, while here it was open for the jury to find that appellant's husband did not know or realize that a train was approaching. It does not appear in this case that the driver was racing with the train in an attempt to pass ahead of it over the crossing. The Covington Case does not purport in any wise to limit or overrule the earlier case of Seaboard A. L. R. Co. v. Watson, 94 Fla. 571, 113 So. 716, 720, where it was said: "There may be concurrent causes of a single injury—concurrent negligence of two separate and distinct agencies—which, operating contemporaneously, together constitute the efficient proximate cause of the injury inflicted; and without either one of which the harm would not have been done." The just quoted language was used in a case in which the plaintiff was suing to recover damages for an injury which she sustained, in rejecting a contention that the negligence of plaintiff's husband, who was driving an automobile in which she was riding, was the sole proximate cause of a collision between the automobile and a train at a highway crossing. That appellee, upon evidence adduced by appellant, could have been held by the jury to be liable, is conclusively established, as it seems to us, by the Supreme Court of the United States. In Little v. Hackett, 116 U. S. 366, 6 S. Ct. 391, 392, 29 L. Ed. 652, a passenger in a hired carriage was injured when the driver negligently turned his horses upon a railroad crossing without taking the precaution to ascertain that a train was coming. The railroad company was held liable to the passenger because of its concurrent negligence in failing to give signals of its approach, or to have a flagman on duty. In disposing of that branch of the case the court said: "The evidence tended to show that the accident was the result of the concurring negligence of the managers of the train and of the driver of the carriage,—of the managers of the train in not giving the usual signals of its approach by ringing a bell and blowing a whistle, and in not having a flagman on duty; and of the driver of the carriage in turning the horses upon the track without proper precautions to ascertain whether the train was coming." In Kreigh v. Westinghouse, Church, Kerr & Co., 214 U. S. 249, 29 S. Ct. 619, 53 L. Ed. 984, it was held that it was a question for the jury to determine whether the operation of a defective derrick was not attributable to faults of construction and equipment, for which the master would be liable, as well as to negligent handling by plaintiff's fellow servants. Our conclusion is that the jury would have been warranted by the evidence in finding that appellee was liable in damages to appellant for the deaths of her children.

The judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

HUTCHESON, Circuit Judge.

I concur with the majority in their conclusion that "the right of recovery for the deaths of plaintiff's children should have been submitted to the jury." I concur with them in the reasons advanced in support of their conclusions that the evidence did not establish, as matter of law, that "their father's negligence was the sole proximate cause of their deaths. That the jury might reasonably have concluded that their deaths were caused by the contributing or concurrent negligence of their father and the railroad company." Because I do concur in these

conclusions and in their supporting reasons, I am compelled to dissent from the other conclusion of the majority, that the evidence makes a case under which, as matter of law, there could be no recovery for the death of plaintiff's husband. I not only think this conclusion is logically indefensible, but I think that it can be demonstrated that it is equally opposed to the words of the Florida statutes and to the meaning and effect given to those words by the Florida decisions.

By the words of section 7051 of the Florida statutes quoted in the majority opinion, the burden in crossing accidents is on railway companies to show absence of negligence on their part. By the words of section 7052 of the Florida statutes, also quoted, where the defendant shows that the negligence or consent of the complainant is the sole cause of the injury, its burden is fully sustained, and no recovery may be had. Where it shows no more than that complainant and defendant are both at fault, its burden is only partially sustained, and the plaintiff, though his damages are diminished by the amount of his fault, may still recover.

I cannot find within the ambit of the statutory words any support for the conclusion of the majority that, though the negligence of the driver is not the sole proximate cause, but only a concurring or contributing cause of the injury, the degree of his contributory negligence may be so much greater than that of defendant as to completely bar his recovery. The statutes of Arkansas expressly provide that contributory negligence shall not prevent recovery when it is of less degree than defendant's negligence. Section 8575, Crawford & Moses' Digest; Bradley v. Mo. Pacific R. Co. (C. C. A.) 288 F. 484, 496. While in Georgia by construction the courts have imposed this meaning on a statute having the same words as the Florida statute. Lamb v. McAfee, 18 Ga. App. 584, 90 S. E. 103, 105. This rule, however, does not obtain in Florida. In Atlantic Coast Line R. Co. v. Watkins, 97 So. 350, 121 So. 95, 101, where recovery was allowed, the court said: "While we think that both the company and its engineer were at fault in the lack of reasonable prudence, * * * the degree of recklessness and lack of prudence shown by Mr. Watkins [for whose death plaintiff sued] was vastly greater."

I have carefully examined the Florida decisions from the beginning. They have without varying held, as to crossing accidents, that, where both plaintiff and defendant are legally negligent, that is, where the negligence of each proximately contributes or concurs to produce the injury, plaintiff and those in the vehicle with him may recover without regard to the amount or degree of fault of the plaintiff; that, where plaintiff's negligence is the sole proximate cause of the injury, neither the plaintiff nor any of those in the vehicle with him may recover, for the reason that in that case defendant has rebutted the presumption of negligence cast on it by the statute and shown itself free from fault.

Every decision cited by the majority bases on Atlantic Coast Line R. Co. v. Miller, 53 Fla. 246, 44 So. 247, 249. Back of it are two decisions to the same effect. In an attempted demonstration of this position, I shall set out brief extracts from the cases, italicizing the controlling words:

"The proofs show, conclusively, * * * that the injury to the plaintiff on this occasion resulted *solely and entirely* from her own reckless, careless, and negligent act of attempting to cross the track immediately in front of a moving locomotive. * * * Under these circumstances she is by law not entitled to recover from the railroad company for the injuries so received. * * * *There was no evidence of any negligence* on the part of the defendant company *that was the proximate cause of,* or that *contributed to the bringing about of,* the injury to plaintiff. On the other hand the uncontradicted evidence * * * showed affirmatively that *it was not guilty of any negligence that contributed to the production* of the injury to the plaintiff, but the plaintiff's own testimony * * * showed that the accident and injury to her resulted *solely from her own recklessness and imprudence.*" Seaboard Air Line R. Co. v. Barwick, 51 Fla. 304, 41 So. 70, 71.

"*In order to their recovery of damages negligence of the railroad company must have existed, and must have been the proximate cause of the injury;* for if the heedlessness or lack of prudence of the party injured *was the sole proximate cause of the injury, he cannot recover damages, however negligent the railroad company may otherwise have been.*" Seaboard Air Line Ry. v. Smith, 53 Fla. 375, 43 So. 235, 240.

"Under our statute the defendant railroad company is liable for all injury to persons and property caused by the running of its engines and cars, unless the company shall show that it has used all ordinary care and diligence upon the occasion to avoid or prevent the injury. *There was no careless-*

ness or negligence on the part of the defendant shown or proven by the plaintiff that contributed to the bringing about of the injury, and the unshaken and uncontradicted evidence for the defense affirmatively showed that no such negligence was attributable to the defendant, but that the deceased brought down the shocking accident upon himself solely by his careless driving upon the defendant's railway track immediately in front of a rapidly approaching train, of whose presence he must have known, that was too close upon him when he first got upon the track to be stopped by any known human agency, without coming in violent collision with him." Atlantic Coast Line R. Co. v. Miller, 53 Fla. 246, 44 So. 247, 249.

"Conceding that the plaintiff's own testimony *shows negligence on her part, as there was some evidence tending to show negligence in the fireman, the case should have been submitted to the jury to determine the liability of the defendant, if any, and if damages are allowed, to diminish them 'in proportion to the amount of default attributable to' the plaintiff."* Johnson v. Louisville & N. R. Co., 59 Fla. 305, 52 So. 195, 197.

"The imprudence of the plaintiff below in * * * heedlessly riding his motorcycle up to and directly in front of the approaching train * * * exhibited a lack of prudence which the known risks demanded that he should exercise. The engineer * * * had the right to presume * * * that he would not attempt to cross the track ahead of the train with such a narrow margin of time in which to accomplish it, under such circumstances the speed of the train. * * * could not be considered *the proximate cause of the injury.* Atlantic Coast Line Ry. v. Miller, 53 Fla. 246, 44 So. 247." Seaboard A. L. Ry. v. Tomberlin, 70 Fla. 435, 70 So. 437, 438.

"The negligence of the plaintiff in *undertaking to cross the track * * * under the circumstances was very great. It would not be wrong to say that it amounted to recklessness. * * * We think that such heedlessness or lack of prudence amounting to a positive disregard of danger was the sole proximate cause of the injury.*" Louisville & N. R. Co. v. Padgett, 71 Fla. 90, 70 So. 998, 999.

"The immediate cause of the injury was the choking down of the plaintiff's engine, causing his car to stop on the railroad track. With that the railroad had nothing to do, and in no way contributed to it. * * * If the engine of the automobile had not choked down when it got on the track, the accident would not have occurred. * * * This was the proximate cause of the accident, and the railroad was not guilty of negligence in not guarding against the possibility of the automobile breaking down when on its track." Louisville & N. R. Co. v. Harrison, 78 Fla. 381, 83 So. 89, 90.

In Egley v. S. A. L. R. Co., 84 Fla. 147, 93 So. 170, 171, the judgment of the court was "affirmed, on the authority of the S. A. L. v. Tomberlin, 70 Fla. 435, 70 So. 437; L. & N. v. Padgett, 71 Fla. 90, 70 So. 998."

In Atlantic C. L. R. Co. v. Gornto, 89 Fla. 99, 103 So. 117, the judgment was "reversed upon authority of" the Egley, Padgett, and Tomberlin Cases.

"It seems clear that the injury was caused by the plaintiffs' own negligence, since, if they had in fact looked down the track, they would have seen the train before going so near the track that injury was inevitable. * * * *Had there been negligence of the defendant railroad company in operating its train as alleged, which appreciably contributed to causing the injury, the defendant would be liable for damages under the statute, even though negligence of the plaintiffs also proximately contributed to the injury.*" Florida East Coast R. Co. v. Davis, 96 Fla. 171, 117 So. 842, 844.

*"By the well-established rule of this court, the record not only exhibits that degree of flagrant carelessness on the part of plaintiff as would bar recovery, but we think it meets and rebuts the presumption of negligence cast on it by the law."* Southern R. Co. v. Mann, 91 Fla. 948, 108 So. 889, 890.

*"Although the plaintiff was not under the evidence chargeable with the contributory negligence of her husband, yet if he was negligent in driving the automobile upon the track in front of the approaching railroad cars, and this negligence on his part was the sole proximate cause of the collision, * * * plaintiff would have no right to recover."* Seaboard A. L. R. Co. v. Watson, 94 Fla. 571, 113 So. 716, 720.

Three late Florida cases, collecting up, analyzing, and stating the rule of the Florida cases in accordance with this view, are Germak v. Florida East Coast R. Co., 95 Fla. 991, 117 So. 391, 393; Atlantic Coast Line R. Co. v. Watkins, 97 Fla. 350, 121 So. 95; Covington v. S. A. L. R. Co., 99 Fla. 1102, 128 So. 426. In the Germak Case, the court, because of the Florida statute, refused to follow the rule of the Goodman Case, 275

U. S. 66, 48 S. Ct. 24, 72 L. Ed. 167, 56 A. L. R..645. It declared that the effect of the Florida statute is:

"If it appears that the injury was caused solely by the negligence of the party injured, there can be no recovery, * * * and, if both the injured and the employees of the railroad company were at fault in causing the injury, there may be a recovery, but the damages will be reduced in proportion to the contributory negligence of the injured party."

The Watkins Case, a case in my opinion undistinguishable from this, was a suit by a widow for the death of her husband in a crossing accident. The statute was re-examined in the light of the authorities, and it was held that, though the evidence showed that the degree "of recklessness and lack of prudence shown by plaintiff's decedent" was "vastly greater" than the negligence of the defendant, plaintiff could recover, her damages, however, to be greatly diminished because of that fault.

In Covington v. S. A. L. R. Co., 99 Fla. 1105, 128 So. 426, 428, the Supreme Court held that a child, injured in a crossing accident while in a car which his father was driving, was not entitled to recover, because his father's negligence was the sole proximate cause of the injury. It approved the language of the District Judge: "There can be no doubt of these facts, and how could it be possible that any negligent act of the defendant contributed to the injury, I cannot see." While in his concurring opinion Brown, J., said: "The evidence so strongly preponderated to sustain the plea that the collision and injury was *due solely to the negligence of the father* that this court would not be authorized to hold the lower court in error in granting the motion for new trial."

In Claughton v. Atlantic Coast Line R. Co., 47 F.(2d) 679, this court correctly announced and applied the Florida rule that, while the sole negligence of a driver is a bar to recovery for a crossing injury, contributory negligence is not. Such negligence bars neither the driver nor those in the vehicle with him. It merely diminishes the amount of the recovery of those negligent or responsible for the negligence. Bradley v. Mo. Pac. R. Co. (C. C. A.) 288 F. 484.

The opinion of the majority advances a third view as maintainable in Florida, that there are degrees of contributory negligence, and that a driver may be so contributorily negligent as that, though the recovery of those in the car with him will not be barred

because his negligence is not the sole but a concurring proximate cause of the injury, his own recovery will be.

I find no warrant in the Florida statute nor in any of its decisions for this view. I think it overrules the Claughton Case. I respectfully dissent from it.

On Petition for Rehearing.

PER CURIAM.

As neither of the judges who concurred in the judgment of the court in the above numbered and entitled cause is of opinion that appellant's petition for rehearing should be granted, it is ordered that the said petition be, and the same hereby is, denied.